UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NICHOLAS D. MOSSER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3: 03-CV-2260-B |
| | § | ECF |
| THOMAS HANEY, et al., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant the City of Dallas's Motion for Summary Judgment and Defendants Haney and Felini's Motion for Summary Judgment (doc. 30), filed as a Joint Motion Submission on October 27, 2004. After review of the pleadings and evidence, the Court **GRANTS** the City's Motion and **GRANTS IN PART** and **DENIES IN PART** Haney and Felini's Motion.

### I. BACKGROUND FACTS[1]

This case arises out of an altercation between Plaintiff Nicholas Mosser ("Mosser") and certain Dallas police officers at the scene of a minor traffic accident. Although hotly contested, Mosser's version of events indicate that on October 1, 2001, Mosser was involved in a fender bender with Shante Nolen ("Nolen"). (App. p. 85) After Nolen allegedly refused to provide her driver's license or proof of insurance, Mosser called 9-1-1 to request assistance from the Dallas Police Department. (*Id.*) Defendant Michael Felini ("Felini"), a Dallas police officer, arrived and spoke

---

[1] The Court takes its facts from the Joint Appendix ("App.") submitted by the parties. The Court resolves all fact issues in favor of Mosser, the non-movant, as is required in the summary judgment context. *See Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004).

- 1 -

to both parties. (*Id.*) Mosser then called 9-1-1 again to request that a supervisor be sent to the scene. (*Id.*) Felini provided a form to Mosser, and Mosser sat in his car to fill it out. (*Id.*)

After completing the form, Mosser delivered it to Felini and sat back inside his vehicle to wait. (*Id.* at pp. 85-86) By this time, Defendant Thomas Haney ("Haney"), also a Dallas police officer, had arrived, and subsequently, Sergeant Ray Beaudreault ("Beaudreault") also appeared at the scene. (*Id.*) Mosser called his father to discuss the situation and offered the phone to Beaudreault. (*Id.* at p. 86) Beaudreault hung up the phone and tossed it into Mosser's vehicle. (*Id.*) The phone rang and Mosser reached for the phone and answered it. (*Id.*) At that point, Haney allegedly jumped on Mosser and forced him across the center console of the car. (*Id.*) According to Mosser, one officer began pulling his feet out of one side of the car, while another officer was trying to pull Mosser's head out of the other side of the car. (*Id.*) Haney allegedly began to choke Mosser, while lying on top of him in the car, and Mosser eventually lost consciousness. (*Id.*) When Mosser awoke, he was lying on the pavement in the parking lot with a wound to his face, his feet bound, and his hands cuffed behind his back. (*Id.*) He was subsequently transported to jail. (*Id.*)

While at the jail, Haney allegedly dragged Mosser by his feet across the floor and threatened to kill him while in the elevator. (*Id.* at pp. 86-87) Mosser was charged with assault and evasion of arrest. (*Id.* at pp. 87, 131) Mosser was found not guilty of the evasion of arrest charge, and the assault charge was dismissed. (*Id.*)

Although at the summary judgment stage the Court must accept Mosser's version of the facts, the Court will now recount the Defendants' rendition of events for purposes of identifying material fact issues in the case. According to the Individual Defendants (Felini and Haney), while Mosser was sitting inside his car, he kicked open the car door so as to cause it to strike Haney, who was

standing near the vehicle. (*Id.* at pp. 7, 12) Haney reported this conduct to Beaudreault who advised Haney to arrest Mosser for assaulting a police officer. (*Id.* at pp. 15, 199) Mosser had exited his vehicle when Haney told him he was under arrest. (*Id.*) Mosser then allegedly tried to climb into his car and shut the door. (*Id.* at p. 119) Haney managed to keep the door from shutting and climbed into the car to try and pull Mosser out. (*Id.* at pp. 119, 125) The other officers also tried to remove Mosser from his vehicle, but Mosser was actively resisting. (*Id.*) Haney attempted to use the Lateral Vascular Neck Restraint ("LVNR") on Mosser, but could not get his arm around Mosser's neck. (*Id.* at pp. 125-27) Eventually, the officers succeeded in getting Mosser out of his car and handcuffing him. (*Id.* at p. 119)

## II. PROCEDURAL HISTORY

Mosser filed suit against Haney, Felini, and the City of Dallas ("the City") on September 30, 2003 regarding the above-described incident. Mosser's Third Amended Complaint states causes of action for unreasonable seizure and excessive force against the Defendants and state law claims for assault, false imprisonment, intentional infliction of emotional distress and false arrest against the Individual Defendants. Defendants bring a counterclaim for attorneys' fees under 42 U.S.C. § 1988 against Mosser. Defendants filed the instant motions for summary judgment on October 27, 2004 as a Joint Motion Submission, seeking summary judgment on all of Mosser's claims. Neither party has sought summary judgment on Defendants' counterclaim. The Court now turns to the merits of its decision.

## III. ANALYSIS

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that,

as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (per curiam). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the Court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002). The Court will first address the City's Motion for Summary Judgment.

### A. *City of Dallas*

Mosser brings an excessive force claim against the City pursuant to 42 U.S.C. § 1983, which, in short, permits recovery for persons deprived of constitutional rights under color of law. Municipal liability under § 1983 must be premised on a municipal policy or custom that causes the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000) (per curiam). Thus, Mosser must have evidence of a City policy or custom that caused his alleged constitutional injuries in order to survive summary judgment.

For purposes of § 1983 liability, a policy may be a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam) ("*Bennett I*"). A custom is shown by evidence of a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated

policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Burge*, 336 F.3d at 369; *Bennett I*, 735 F.2d at 862. To prove a custom exists, a plaintiff must demonstrate actual or constructive knowledge of the custom attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. *Burge*, 336 F.3d at 370.

The City moves for summary judgment on the ground that Mosser does not have evidence of a City policy or custom that caused Mosser's alleged injuries. Mosser responds that (1) the City has a policy or custom in the Dallas Police Department's General Orders of permitting use of the LVNR in cases where it is not warranted and (2) the City has a policy or custom of failing to adequately train its police officers in the proper use of the LVNR. The Court will address each allegation in turn.

    1.    <u>Dallas Police Department's General Orders</u>

The Dallas Police Department's General Orders, which are signed by the Chief of Police for Dallas, dictate when it is acceptable to use the LVNR procedure. According to the General Orders,

> 1. Use of a LVNR hold is justified:
>    a. To control a physically resisting person.
>    b. To defend an officer or other person.
>    c. To protect a person from self-injury.
>    d. When lesser levels of control are ineffective or inappropriate for the resistance.
>    e. On physically resisting handcuffed prisoners when lower forms of control are ineffective.
> 2. The LVNR will not be used on subjects who are using techniques of non-cooperation and not posing a physical threat to anyone.

(App. p. 98) The City moves for summary judgment on the ground that the General Orders of the police department do not constitute a policy or custom for purposes of § 1983 liability. Specifically,

the City claims that the Orders were not issued by a City policymaker.

Because a municipality is not subject to *respondeat superior* liability, the acts of individual employees of the municipality do not create liability under § 1983 unless that employee is a policymaker. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988)(plurality opinion). Whether a city official is a policymaker is a question of state law. *Id.* at 124. A "policymaker" is one who takes the place of the governing body in a designated area of city administration. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)(per curiam). Policymakers not only govern conduct, they decide the goals for a particular city function and devise the means of achieving those goals. *Id.*; *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)("*Bennett II*"). Policymakers are not supervised except as to the totality of their performance. *Webster*, 735 F.2d at 841; *Bennett II*, 728 F.2d at 769.

Policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the official. *Webster*, 735 F.2d at 841. If the governing body chooses to delegate policymaking authority to a city official, it does so in either of two ways. *Bennett II*, 728 F.2d at 769. It may delegate policymaking power by an express statement, job description, or other formal action. *Id.*; *Swann v. City of Dallas*, 922 F. Supp. 1184, 1204 (N.D. Tex. 1996). Or it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role. *Bennett II*, 728 F.2d at 769. In essence, the governing body must expressly or impliedly acknowledge that the agent acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent. *Webster*, 735 F.2d at 841.

Applying the above principles in this case, the Court considers whether the Chief of Police

is a policymaker for purposes of governing police conduct. According to the Dallas City Charter, the Chief of Police shall have "immediate direction and control of the police department...and shall promulgate all orders, rules, and regulations for government of the police force...." (App. p. 94) This power, however, is "subject to the supervision of the city manager, and also subject to such rules, regulations, and orders as the city manager may prescribe, not inconsistent with the ordinances of the city...." (*Id.*) Mosser claims that this provision makes the Chief of Police a policymaker for purposes of issuing rules of police conduct. The City counters that, because the Chief is subject to the supervision and rules of the city manager, the Chief does not have the final policymaking authority required for a policymaker.

The issue of who is a policymaker is one for the Court. *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340 n.8 (5th Cir. 1989). In discussing policymakers, the Supreme Court and Fifth Circuit have required that a city official have *final* policymaking authority before they can be considered a policymaker that subjects a city to liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986)(plurality opinion); *Worsham*, 881 F.2d at 1340. As described by the Supreme Court:

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Praprotnik*, 485 U.S. at 127 (emphasis in original).

Here, the Dallas City Charter states that, while the Chief of Police has immediate control over the police department, the Chief of Police is still subject to the supervision of the City Manager. (App. p. 94) Thus, the Chief of Police is not the policymaker for Dallas's police department, as he remains subject to the rules and supervision of the City Manager. *See Curtis v. Arapaho Venture, Ltd.*,

Civ. No. 3:03-CV-2099-H, 2004 WL 2248236, at *3 (N.D. Tex. Oct. 5, 2004) (noting under Dallas City Charter the City Council retains final authority for promulgating police regulations). Mosser produced no evidence that the City Manager or City Council[2] had any connection with the General Orders that were signed by the Chief of Police.[3] Because the General Orders were not issued by a policymaker, the Court cannot find that the General Orders constitute the policy of the City of Dallas.

For the same reason, the Court also finds that the General Orders do not constitute a custom of the City of Dallas. As noted above, proof of a custom requires the plaintiff to demonstrate actual or constructive knowledge of the custom to the governing body or a policymaker. *Burge*, 336 F.3d at 370. Mosser has not produced any evidence connecting the General Orders with the City Manager or City Council or even showing that the City Manager or City Council were aware of the General Orders. As such, the Court finds that Mosser has failed to demonstrate that the General Orders of the Dallas Police Department are a policy or custom of the City.

2. Failure to Train

Mosser also brings a failure to train claim against the City, alleging that it inadequately trained its officers in the LVNR procedure, and that such failure led to Mosser's injuries. The City moves for summary judgment on this claim on the grounds that Mosser has no evidence of a policy or custom of failing to train officers in LVNR.

As described by the Supreme Court, the question in a failure to train case is whether the

---

[2] At this time, the Court makes no determination of whether the City Manager or City Council is the appropriate policymaker for purposes of this case.

[3] Mosser has not attempted to demonstrate that the City Manager's supervision and control is illusory, ineffective, or meaningless. *See Worsham*, 881 F.2d at 1341.

training program is adequate, and if it is not, whether the inadequate training represents government policy. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). To succeed on a failure to train claim, Mosser must show (1) the City's LVNR training procedures were inadequate; (2) the City's policymakers were deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused Mosser's injury. *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). Deliberate indifference is stringent standard of fault and requires proof that a municipal actor disregarded a known or obvious consequence of his action. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)

As above, Mosser has failed to produce any evidence that would connect the training received by the City's police officers to the City's policymakers, and thus Mosser cannot satisfy the second element of a failure to train claim. Mosser produced evidence that instead of receiving 4 hours of training in the LVNR annually (which is what is recommended by the creator of the LVNR), the City only requires 2-3 hours biannually of training. (App. pp. 169-70) Even assuming this constitutes "indifference," there is no evidence that the City policymakers *deliberately* adopted this training regimen in disregard of anyone's constitutional rights. Indeed, there is no evidence that the City Manager or City Council were even aware of or authorized this amount of training. *See, e.g., Estate of Davis*, 406 F.3d at 385 (noting there was no evidence officer's supervisors were aware of his aggressive background). Without evidence that a policymaker was deliberately indifferent to the need to train, Mosser cannot demonstrated a policy or custom of failing to train officers in the LVNR procedure.

Because Mosser has not produced evidence of a City policy or custom that caused his constitutional injuries, the Court **GRANTS** the City's Motion for Summary Judgment.

B.  *Officers Haney and Felini*

Mosser brings claims against both Haney and Felini for arresting him without probable cause and for using excessive force. Because Mosser is suing Haney and Felini in their individual capacities, the affirmative defense of qualified immunity is available to them. *Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 (5th Cir. 1994). Qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005); *see also Estate of Davis*, 406 F.3d at 380 (stating that qualified immunity protects all but the plainly incompetent and those who knowingly violate the law).

The qualified immunity analysis is a two-step inquiry. *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). First, the Court must decide whether Mosser's allegations, if taken as true, establish that Haney and Felini's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Mace*, 333 F.3d at 623. If there is no constitutional violation, the inquiry ends. *Saucier*, 533 U.S. at 201. If, however, the allegations describe a constitutional violation, the Court must decide whether the right was clearly established at the time - that is, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Mace*, 333 F.3d at 623-24; *see also Saucier*, 533 U.S. at 201. The Court will first consider Mosser's claim of unlawful arrest.

1.  Unlawful Arrest

As stated above, the first question this Court must ask is whether Mosser's allegations, if taken as true, establish the violation of a constitutional right. *Saucier*, 533 U.S. at 201. Here, Mosser

alleges that he was arrested without probable cause in violation of the Fourth Amendment. *See Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)(noting the Fourth Amendment requires an arrest to be supported by probable cause). Probable cause to arrest an individual exists when "the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004). Thus, to prevail on his false arrest claim, Mosser must produce evidence indicating that Haney and Felini did not have probable cause to arrest him. *See id.* at 655.

Haney and Felini arrested Mosser for assault after he allegedly kicked his car door into Haney. (App. pp. 7, 12, 15) However, Mosser claims that he never caused his car door to contact Haney. (*Id.* at p. 86) If Mosser's car door never contacted Haney, there are no facts that would lead a reasonable person to conclude that Mosser had committed an assault. Thus, taking Mosser's allegations as true, there was no probable cause to arrest him. Therefore, Mosser's allegations state a claim for the violation of a constitutional right, and the Court must now consider whether Haney and Felini acted reasonably under the circumstances.

The second prong of the qualified immunity test requires the Court to examine whether Haney and Felini's actions were reasonable, or if their conduct clearly violated Mosser's constitutional rights. *Mace*, 333 F.3d at 623-24. The Court will examine the conduct of each officer separately. Turning first to Haney, Mosser claims that he did not cause his car door to contact Haney intentionally or accidentally. (App. p. 86) If true, Haney could not have had a reasonable belief that an assault took place. There is certainly a fact issue as to whether Haney believed he had probable cause to arrest Mosser, and Haney admits as much in his Reply. Therefore, the Court

**DENIES** Haney's Motion for Summary Judgment as to Mosser's claim for unlawful arrest.

Felini, however, there is no indication in the record that Felini had first-hand knowledge of whether or not Mosser's car door hit Haney. Instead, Felini learned of the alleged assault from Haney. (*Id.* at pp. 12, 15) An arresting officer does not have to have personal knowledge of all the facts constituting probable cause, but may rest upon the collective knowledge of the police when there is communication between them. *U.S. v. Walker*, 960 F.2d 409, 416 (5th Cir. 1992). Further, an officer is permitted to make reasonable mistakes of fact without losing the protection of qualified immunity. *Haggerty*, 391 F.3d at 656. Thus, even if Haney lied to Felini about having probable cause to arrest Mosser, Felini was permitted to rely on Haney's report of assault, and qualified immunity will protect that reasonable mistake of fact. Mosser did not produce any evidence that Felini had firsthand knowledge of the facts surrounding the probable cause determination. Without evidence that Felini knew there was no probable cause for arrest, Felini is entitled to qualified immunity because he reasonably relied on Haney's statement in making the arrest. Therefore the Court **GRANTS** Felini's Motion for Summary Judgment as to Mosser's claims that Felini is liable for unlawful arrest.

   2.   Excessive Force

Moving next to Mosser's claim that Haney and Felini used excessive force when arresting him in violation of the Fourth Amendment, the Individual Defendants challenge Mosser's allegations on the ground that Mosser has not alleged a constitutionally significant injury. Thus, even if his allegations are taken as true, the Individual Defendants contend that Mosser has not made out a constitutional violation.

In order to state a claim for excessive force, Mosser must allege (1) an injury which (2)

resulted directly and only from the use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable. *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996). Prior to 1992, the Fifth Circuit required a "significant" injury in order to support a claim for excessive force. *Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir. 1989)(percuriam). However, after the Supreme Court's decision in *Hudson v. McMillian*, 503 U.S. 1 (1992), the Fifth Circuit has held that the injury need no longer be "significant;" however, de minimum injuries are not actionable. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)(noting that the plaintiff must suffer "some form of injury"); *see also Glenn*, 242 F.3d at 314. Here, the Individual Defendants contend that Mosser's alleged injuries are de minimus and, thus, not actionable.

Mosser's claims include allegations that he was (1) choked into unconsciousness, (2) received multiple contusions, (3) had wrist problems because his handcuffs were too tight, and (4) suffered psychological injuries. Turning first to the allegations regarding being choked into unconsciousness, the Individual Defendants rely on *Wesson v. Oglesby*, 910 F.2d 278 (5th Cir. 1990) to argue that being choked into unconsciousness is a de minimus injury. The Individual Defendants' argument fails for two reasons, however. First, *Wesson* was decided while the Fifth Circuit was operating under the "significant" injury standard, which it has since abandoned. Second, the Court in *Wesson* never squarely addressed whether being choked into unconsciousness was a constitutional injury, as Wesson chose not to make that argument on appeal. *Id.* at 283.

Since eliminating the "significant" injury standard, the Fifth Circuit has upheld a finding that being put into a choke hold resulting in temporary unconsciousness is an actionable injury. *Valencia v. Wiggins*, 981 F.2d 1440, 1447 (5th Cir. 1993). The Fifth Circuit has gone so far as to declare that, if excessive to the need at hand, a choking that resulted only in dizziness and shortness of breath

- 13 -

constitutes a constitutional injury when the officer was motivated by malice. *Williams*, 180 F.3d at 704. Thus, the Court concludes that Mosser's allegation that Haney choked him into unconsciousness states a claim for an injury.

Mosser's claims for contusions and tight handcuffs, however, do not make out a constitutional violation, as these injuries are de minimus. The evidence presented of the cuts and scrapes received by Mosser do not convince the Court that those injuries were more than de minimus. *Tarver v. City of Edna*, __ F.3d __ , 2005 WL 1229357, *4 (5th Cir. 2005)(holding "acute contusions of the wrist" were de minimus injuries) (App. pp. 37-45)  Further, the Fifth Circuit has held several times that tight handcuffs, without more, do not meet the standard of an actionable injury. *Tarver*, 2005 WL 1229357, at *4; *Glenn*, 242 F.3d at 314. The Fifth Circuit has suggested that if the officers were acting maliciously in applying the tight handcuffs or if the handcuffs caused more than a de minimus injury to the wrists that there may be an actionable injury. *Tarver*, 2005 WL 1229357, at *4-5; *Glenn*, 242 F.3d at 314. However, Mosser has met neither element of proof. Mosser has not alleged that the Haney and Felini were aware the handcuffs were too tight, much less that the action was taken with malice. Further, Mosser has not produced evidence of an injury to his wrists that rises above de minimus. Therefore, the Court finds that Mosser's allegations that he was received several contusions and was handcuffed too tightly do not state a claim for excessive force.[4]

Finally, Mosser's claim that he suffered psychological injuries is sufficient to state a claim for

---

[4] The Court declines to adopt Mosser's reasoning that anytime someone is arrested without probable cause the amount of force used is excessive. Following Mosser's logic would turn every unlawful arrest claim into an excessive force claim regardless of the amount of force used.

a constitutional injury.  The Fifth Circuit has clearly held that psychological injuries alone can establish a Fourth Amendment excessive force claim.  *Flores v. City of Palacios*, 381 F.3d 391, 400 (5th Cir. 2004).  Therefore, Mosser has alleged facts that, if true, would establish a constitutional violation with respect to his psychological injuries.  Because the Court has held that rendering Mosser unconscious is a constitutional injury, it proceeds to the next step of the qualified immunity analysis.

The Court must now consider whether Haney and Felini's actions in causing Mosser's alleged injuries were objectively reasonable at the time.  *See Mace*, 333 F.3d at 623-24.  Again, the Court examines the actions of each officer individually.  According to Haney, he attempted to apply the LVNR to subdue Mosser because Mosser was resisting arrest.  (App. pp. 125-27)  Mosser claims that he was doing nothing more than sitting in his car when Haney jumped on him and began to choke him.  (*Id.* at p. 86)  If Mosser's version is accepted as true, as it must be for summary judgment purposes, Haney's use of force was clearly excessive since Mosser was not resisting arrest and did not pose a threat to anyone.  *See, e.g., Tarver*, 2005 WL 1229357, at *6 (denying qualified immunity to officer who slammed car door on foot and head of suspect who did not pose immediate threat to safety of officers or others).

Despite this fact issue, Haney moves for summary judgment on the ground that Mosser does not know which officer specifically jumped on his back.  Although Mosser may not have firsthand knowledge of which officer jumped on his back, Haney and Felini have both testified that it was Haney who climbed on top of Mosser.  (App. pp. 119, 125-26)  Therefore, there is undisputed evidence in the record that Haney was the officer who allegedly applied the LVNR.  Therefore, the Court **DENIES** Haney's Motion for Summary Judgment on Mosser's excessive force claim.

As for Felini, there is no evidence that Felini choked Mosser or caused him to lose consciousness. Without evidence that Felini applied the excessive force, he cannot be held liable. Therefore, the Court **GRANTS** Felini's Motion for Summary Judgment on Mosser's excessive force claim.

### 3.   State Law Claims

Mosser also brings state law claims for false arrest, false imprisonment, assault, and intentional infliction of emotional distress. The Individual Defendants move for summary judgment on the claims for false arrest, false imprisonment, and assault on the same grounds as their federal counterparts, discussed above. Specifically, the Individual Defendants claim they are entitled to official immunity.

Under Texas law, a government employee is entitled to official immunity from suit when (1) his actions involve the performance of discretionary duties; (2) those actions are taken in good faith; and (3) the employee is acting within the scope of his authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). The first and third elements are not disputed in this case, so the question is whether Haney and Felini were acting in good faith.

The test for good faith in Texas courts is nearly identical to the qualified immunity standard in federal court. *Haggerty*, 391 F.3d at 658 (noting official immunity under Texas law is "substantially the same as" federal qualified immunity). Texas courts look to whether a reasonable official could have believed his conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred. *Chambers*, 883 S.W.2d at 656. As discussed above, the evidence shows that Felini reasonably believed that probable cause existed for the arrest and did not use excessive force against Mosser. However, the evidence shows

that there are genuine issues of material fact as to whether Haney reasonably believed probable cause existed and whether the amount of force Haney used was excessive. Therefore, for the same reasons the Court granted Felini's Motion on qualified immunity and denied Haney's Motion on qualified immunity regarding Mosser's federal claims, the Court **GRANTS** Felini's Motion for Summary Judgment on Mosser's state law claims for false arrest, false imprisonment, and assault on the basis of official immunity; however, the Court **DENIES** Haney's Motion for Summary Judgment on those claims.

The Individual Defendants also move for summary judgment on Mosser's claim for intentional infliction of emotional distress on the ground that their conduct was not extreme and outrageous and that Mosser was already suffering from emotional distress. The elements of an intentional infliction claim are that (1) the defendant acted intentionally or recklessly; (2) his conduct was extreme and outrageous; (3) his conduct cause the plaintiff emotional distress; and (4) that emotional distress suffered by the plaintiff was severe. *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).

Mosser's claim for intentional infliction is based on the same facts as his unlawful arrest and excessive force claim. The Fifth Circuit has found that causing an innocent person to fear that they will be prosecuted for a crime is sufficiently outrageous to support a claim for intentional infliction of emotional distress. *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir. 1989). Thus, Haney's actions in causing the arrest of Mosser, whom Haney allegedly knew to be innocent, are clearly sufficient to withstand summary judgment. As noted above, however, there is no evidence that Felini knew Mosser was innocent or used excessive force. Therefore, the intentional infliction claim against Felini cannot stand.

As for Haney's claim that Mosser was already suffering from emotional distress, the Court finds that such evidence is only persuasive, but not conclusive.  Therefore, the Court **DENIES** Haney's Motion for Summary Judgment on Mosser's claim for intentional infliction of emotional distress, but **GRANTS** Felini's Motion for Summary Judgment on that claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the City's Motion for Summary Judgment and **DISMISSES** Mosser's claims against the City.  The Court **GRANTS IN PART** and **DENIES IN PART** Haney and Felini's Motion for Summary Judgment and **DISMISSES** all of Mosser's claims against Felini.  Mosser's claim against Haney for unlawful arrest and excessive force regarding the allegation of being choked into unconsciousness, as well as Mosser's state law claims against Haney, will proceed to trial.

**SO ORDERED**.

SIGNED June ___17th___, 2005

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　JANE J. BOYLE
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE